THE PEOPLE, *ex rel.* Dean S. Howard *vs.* GEORGE W. NEWELL, auditor, &c.

In July, 1847, the relator entered into contracts with the canal commissioners for the performance of work upon the Black river canal, which contracts contained provisions for the appointment of arbitrators to settle and determine all disputes which might arise, under such contracts.  In July, 1851, the legislature passed an act to provide for the settlement of the claims of the relator, on his canal contracts, whereby the canal commissioners were required, upon his application, to cause those contracts to be settled, and his claims for an additional allowance, &c. and all other claims for compensation, existing under said contracts, above what had been allowed him, to be investigated, tried and settled, in the manner provided in the contracts.  The act further provided that the amount of the award, if any, should be paid by the canal commissioners out of any funds provided for the construction of the Black river canal, &c. subject to their order, as for unpaid arrears, upon such contracts.  Arbitrators having been appointed according to the provisions of the act, they made an award, by which they found due to the relator $9048,33 for work done under the contracts, and connected therewith, and for damages growing out of the contracts, and the further sum of $2088,95 for his counsel and witnesses, fees of arbitrators, &c.  These sums the canal commissioners were by the terms of the award, required to pay to the relator within ten days.  The canal commissioner having charge of that division of the canals, made his draft upon the defendant, as auditor of the canal department, for the payment of the sum awarded; which draft, accompanied by the proper receipt, was presented to the defendant, as such auditor, on the 12th of March, 1852, who refused to pay the same.  Copies of the contracts had been filed in the comptroller's office. *Held*, 1. That the award was valid, and within the terms of the submission.
2. That the draft upon the defendant was valid, although signed by only one canal commissioner.
3. That it was the province of the canal commissioners, and not of the auditor, to determine upon the validity of the award.

4. That it was the clear duty of the auditor to obey the law, and pay the draft; and that it was a proper case for a peremptory *mandamus*, directing him to do so.

Motion for a peremptory mandamus. On the 21st of July, 1847, the relator entered into contracts with the canal commissioners for the construction of three sections of the Black river canal and the dam across the Black river. Each contract contained a provision as follows: "To provide for the speedy and just settlement of this contract, it is hereby further mutually agreed that the resident engineer, for the time being in the employ of the canal commissioners on the work herein contracted for, shall, in all cases, determine the amount or quantity of the several kinds of work which are to be paid for under this contract and the amount of compensation to be paid therefor, and shall within twenty days after the work shall have been completed according to the terms and conditions of this contract, present an account of the same to the canal commissioners, and in case either of the parties to this contract shall be of opinion that the final account when made and presented, as above, shall in any respect be incorrect, or that it is unjust as to either of the parties concerned, having reference to the terms and conditions of this contract, the canal commissioners may, in their discretion, select the chief engineer, or any other disinterested person, and the aforesaid contractor shall select any discreet freeholder residing in the county where the work embraced in this contract is located, and who shall have no interest, direct or indirect in the matter to be submitted to him for decision, and the two thus chosen, shall select another of like qualifications as the person last mentioned; and the persons so selected shall investigate the matters complained of and determine all questions that may arise relating to compensation for work done under this contract, and their decision in relation thereto shall be based on the terms, agreements and conditions of this contract, and when so made, shall be binding as well on the part of the canal commissioners as the aforesaid contractor, and shall be in all respects final and conclusive."

On the 9th of July, 1851, the legislature passed an act enti-

tled " an act to provide for the settlement of the claims of Dean
S. Howard, on his canal contracts," whereby the canal commis-
sioners were required, upon his application, to cause these con-
tracts to be settled, and his claims for an additional allowance
for work done and materials furnished in performing said several
contracts and for extra work ordered by the engineers and com-
missioners in charge of said work, and all other claims for com-
pensation existing under said contracts, above what has been
allowed to him, to be investigated, tried and settled in the manner
provided in said several contracts.

By the second section of the act, it is provided that the
amount of the award, if any, shall be paid by the canal commis-
sioners out of any funds provided for the construction of the
Black river canal and Erie canal feeder, subject to their order,
as for unpaid arrears, upon said several contracts respectively.

Arbitrators having been appointed according to the provisions
of the act, and having heard the proofs and allegations of the
parties, an award was made on the 18th day of February, 1852,
whereby the arbitrators find due to the relator the sum of
$9048,33, for work done under the contracts, and connected
therewith and for damages growing out of the contracts. The
arbitrators also awarded to the relator the further sum of $968
for his counsel and witnesses, and for room and conveniencies
for the hearing, and also $1120,95 for the fees and expenses of
the arbitrators. These sums the canal commissioners were, by
the terms of the award, required to pay to the relator within ten
days after the publication of the award.

On the 11th of March, Mr. Mather, the canal commissioner
having charge of that division of the canals upon which the
contracts were located, made his draft upon the auditor for
the payment of the sum of $11,137,28, being the amount of the
several sums awarded to the relator, which draft, accompanied
by the proper receipt, was on the 12th day of March presented
to the auditor by the relator, and payment was refused.

An order was made at a special term requiring the defendant
to show cause, on the first day of April why a mandamus should
not issue commanding him, as the auditor of the canal depart-

ment, to pay the relator the amount of the draft by his warrant on the treasurer for that amount.

*Edward A. Brown*, for the relator.

*L. S. Chatfield*, (attorney general,) for the defendant.

HARRIS, J.   It was insisted by the attorney general that the draft was not made in conformity with the act of 1851. That act directs that the award, made in pursuance of its provisions, shall be paid by the canal commissioners, &c.   As the draft in question is signed by one commissioner only, it is insisted that it is not drawn in the manner authorized by law. But I do not think this objection should prevail.   The care and superintendence of the canals generally is conferred by law upon the canal commissioners.   In prescribing their duties and powers, the plural number is almost uniformly employed—and yet the commissioners are required to give to each one of their board, a specified portion of the canals in special charge.

The execution of the powers and duties of the commissioners, in respect to each division, is practically committed to the commissioner having that division in charge.   Hence it has been held, that when the statute gives to the " canal commissioners" a right to appeal, it is sufficient, if the appeal is signed by the commissioner having in charge that part of the canals to which it relates.   (*The People* v. *The Commissioners of the Canal Fund*, 3 *Hill*, 599.)   In this very case, the contracts were executed by one commissioner alone.

Again, the act under which this award was made, requires the canal commissioners to pay the amount " as for unpaid arrears upon said several contracts respectively."   The sum awarded is to be deemed money due the contractor upon his contracts.   It is to be paid in the same manner as other payments to contractors are made.   By the 39th section of the statute, relating to canal commissioners, their powers and duties, (1 *R. S.* 224,) it is declared that " either of the canal commissioners may draw upon the commissioners of the canal fund for

any sum to be paid to a contractor upon his contract; and if a copy of such contract shall have been duly filed in the office of the comptroller and a receipt of the contractor for such draft shall also be filed in the same office, it shall be the duty of the commissioners of the canal fund to pay the draft." By the 11th section of the act in relation to the canal department, (*Session Laws of* 1848, *p.* 273,) all moneys authorized by law to be paid by the commissioners of the canal fund, are to be paid by the treasurer, on the warrant of the auditor. If, then, this award is to be regarded as money due to the relator for unpaid arrears upon his contracts, the draft made by the acting commissioner upon the auditor for its payment, is expressly authorized by law, and it was the duty of the auditor to make his warrant upon the treasurer for its payment.

But it was insisted that the arbitrators in making their award exceeded their powers, and that therefore it is void for want of jurisdiction. The submission was made in pursuance of the act of 1851. This act required the canal commissioners to cause the claim of the relator for additional allowance for extra work, and "all other claims for compensation existing under the contracts, to be settled in the manner provided by the contracts"— that is, by arbitration. The legislature evidently contemplated a final settlement of all the claims of the relator upon the state on account of any matter connected with the contracts. The award has been made upon this basis. It embraces allowances for work done under the contracts, for extra work and for damages sustained by the relator in consequence of being delayed in the prosecution of the work, and interest upon moneys due him and withheld. I am unable to perceive that any of these allowances are not within the terms of the submission. So far, therefore, as the amount awarded to the relator on account of his contracts is concerned, I think the arbitrators have not gone beyond the powers conferred upon them. Whether or not they have erred in the decision of questions properly before them, there is now no occasion to inquire.

In respect to the allowance of $968 for "counsel fee, attendance of witnesses, and expenses of rooms for hearing," and the

The People *v.* Newell.

further sum of $1120,95 for "fees and expenses of arbitrators," the case is not so clear. Indeed, I am inclined to think the arbitrators were not authorized to include these expenses in their awards. It is true that it has been repeatedly held in this state, though I think without much consideration, that the power of awarding costs of the arbitration is necessarily incident to the authority conferred on the arbitrators of determining the matters in controversy. This was so decided in *Strang* v. *Ferguson*, (14 *John*. 161;) and again in *Cox* v. *Jagger*, (2 *Cowen*, 657.) See also *Nichols* v. *The Rensselaer County Mutual Insurance Company*, (22 *Wend*. 128.) The same rule is also laid down in *Kyd on Awards*, 152, (*ed. of* 1808.)

But whether the arbitrators had power to award the payment of the costs and expenses of the arbitration or not, I do not think the commissioners were bound to litigate the question. It was, to say the least, a doubtful question. The action of the arbitrators was sanctioned by the decisions already mentioned, and I think too, by a pretty general usage in this state. It certainly cannot be regarded as unjust that a party having a claim against the state, which he has been able to establish as just, should, to a reasonable extent, be indemnified for the expenses to which he had been subjected in its prosecution. It was the province of the canal commissioners, and not the auditor, to determine whether the award should be paid or resisted. The act under which the proceedings were had, charged that duty upon them. They were parties to the award, and if they, being parties, chose to acquiesce in the decision, it did not become the auditor to interfere. No law has conferred upon him the power to decide upon the validity of the award. In assuming to do so, he has more certainly transcended the authority vested in him, than the arbitrators did in awarding to the relator the costs and expenses of the arbitration. The law declares that when a canal commissioner makes his draft for any sum to be paid to a contractor upon his contract, it shall be the duty of the auditor, if a copy of the contract and a receipt of the contractor for such draft have been filed in his office, to pay the draft. Such a draft was drawn. A copy of the contract and

the contractor's receipt were filed. It was the clear duty of the auditor to obey the law and pay the draft. A peremptory mandamus must therefore be awarded.

[Albany Special Term, April 27, 1852. *Harris*, Justice.]